# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JEFFREY D. KENNEDY, | |
| Plaintiff, | No. C13-4115-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jeffrey D. Kennedy seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Kennedy contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be affirmed.

## I. BACKGROUND

Kennedy was born in 1970 and has past work as a construction worker, landscape laborer, production worker/production machine worker and injection molding machine operator. AR 19. He filed applications for DIB and SSI on October 28, 2010, alleging a disability onset date of November 15, 2009. AR 207-15. He alleged disability due to chronic back problems, depression and suicidal thoughts. AR 240. His claims were denied initially and on reconsideration. AR 8. Kennedy then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 13, 2012, before ALJ

Robert Maxwell. AR 8, 30-76. During the hearing, Kennedy and a vocational expert (VE) testified. AR 30-76. On July 26, 2012, the ALJ issued a decision denying Kennedy's claim. AR 8-21. Kennedy sought review of this decision by the Appeals Council, which denied review on October 11, 2013. AR 1-4. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

On December 9, 2013, Kennedy filed a complaint (Doc. No. 2) in this court seeking review of the Commissioner's decision. On January 9, 2014, with the parties' consent (Doc. No. 6), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet

3

the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

(2) The claimant has not engaged in substantial gainful activity since November 15, 2009, the alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et seq*.).

(3) The claimant has the following severe combination of impairments: lumbar spine degenerative disc disease, status post 2002 and 2005 lumbar spine surgeries; obesity (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; he is able to sit for 6 hours and stand/walk at least 2 hours (with normal breaks) in an 8-hour workday; push/pull are unlimited and subject to the lift/carry restrictions; only occasional postural activities, though no climbing ladders, ropes or scaffolds and no crawling; no visual or communicative limitations; and environmentally, the claimant should avoid concentrated exposure to hazards (to include uneven ground).

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on June 2, 1970 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 415.969 and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g) ).

AR 10-21.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of

choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789

(8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

As noted above, the ALJ found that Kennedy suffers from two severe impairments: lumbar degenerative disc disease and obesity.[1] In formulating Kennedy's RFC, the ALJ considered, but discounted, Kennedy's subjective allegations concerning the intensity, persistence and limiting effects of his symptoms. AR 14-18. Kennedy argues that the ALJ's credibility assessment is not supported by substantial evidence. He further contends that if his subjective allegations had been afforded proper weight, a finding of disability would have been mandated.

### A. *Applicable Standards*

To determine a claimant's credibility, the ALJ must consider:

(1) the claimant's daily activities;

(2) the duration, intensity, and frequency of pain;

(3) the precipitating and aggravating factors;

(4) the dosage, effectiveness, and side effects of medication; and

(5) any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective

---

[1] The ALJ found that Kennedy's mental health impairment of depression was not severe because it did not cause more than minimal limitation in Kennedy's ability to perform basic mental work activities. AR 11. Kennedy's brief does not challenge this finding. Doc. No. 12.

medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010). However, the lack of supporting objective medical evidence is a factor the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008).

The ALJ is not required "'to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints.'" *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (quoting *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)). If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 518 F.3d at 982 (quoting *Lewis*, 353 F.3d at 647). The ALJ's credibility determinations are entitled to deference if "they [a]re supported by good reasons and substantial evidence." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). Thus, credibility determinations are primarily to be made by the ALJ, not by the courts. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

### B. The ALJ's Analysis

Early in his ruling, the ALJ observed that Kennedy received unemployment benefits during the period of alleged disability and that this is a relevant factor that must be considered. AR 11. Later, the ALJ described Kennedy's own testimony about his limitations. For example, he noted that Kennedy testified he can sit for only 15 to 20 minutes at a time, can walk only 50 feet without a cane, can stand for only 10 to 12 minutes before suffering increased back pain and can lift about two full gallons of milk. AR 14. He further noted that Kennedy alleged he must lie down for an hour or two after sitting for 15 to 20 minutes and, because of this sitting limitation, can drive for only 15 minutes at a time. AR 15.

The ALJ next summarized the relevant medical evidence of record, starting with two prior back surgeries – a hemilaminectomy at left L5-S1 in 2002 and a microdiscectomy at left L4-L5 in 2005. *Id.* The ALJ noted that while Kennedy claims

a disability onset date of November 15, 2009, there is no evidence of ongoing treatment at that time. *Id.* Instead, the next reference to back pain is a hospital record from July 2010, which states that Kennedy reported the use of Ibuprofen for back pain. *Id.*

The ALJ then reviewed Kennedy's evaluation and treatment by various physicians from August 2010 through May 2012. AR 15-18. A lumbar spine MRI in October 2010 showed moderate disc bulges, no evident nerve root impingement and minimal changes from a 2005 MRI. AR 15, 409. On December 10, 2010, treating physician Jeffrey Goerss, M.D., provided a medical source statement indicating that Kennedy was suffering from depression that was exacerbated "by the fact that he cannot work and has low back pains." AR 337. Dr. Goerss did not explain why Kennedy was unable to work at that time, but did provide some information about his physical limitations, stating:

> [H]e cannot doing [sic] heavy lifting or straining because of his back. Prolonged standing can cause back pain. Stooping and climbing again are generally thought to be more difficult because of the back pain. He had no trouble seeing, hearing and [sic] work environments.

AR 337-38.

The ALJ next discussed a physical examination by a treating neurosurgeon, Michael Puumala, M.D., in February 2011. AR 16. Dr. Puumala indicated that he reviewed the prior MRI and found no specific compression of the nerve root. AR 16, 426. Dr. Puumala reported that he found no surgical indications and referred Kennedy to Mark Drymalski, M.D., for conservative treatment. AR 426.

Dr. Drymalski saw Kennedy on February 24, 2011. AR 16. A physical examination revealed that Kennedy had full strength in both legs; full range of motion in his lumbar spine, hips, knees and ankles; and negative straight-leg-raise and hip impingement test results. AR 16-17, 354. Although Kennedy walked with an antalgic gait favoring his left leg, he was able to walk independently for short distances and there was no indication that it was medically necessary for him to use a cane.[2] AR 17, 331.

---

[2] Kennedy confirmed that no medical provider prescribed use of a cane. AR 58-59, 265, 273.

Based on his examination, Dr. Drymalski provided an opinion in April 2011 that Kennedy could perform light-duty work on a full-time basis. AR 17, 359.

The ALJ next discussed a RFC assessment dated March 30, 2011, and prepared by Dennis Weis, M.D., a state agency medical consultant who reviewed Kennedy's records but did not examine him. AR 17. Dr. Weis noted that Kennedy's general physical exam was normal, apart from obesity, including excellent range of motion in his back and joints. AR 17, 331. He further observed that Kennedy's use of a cane was not medically necessary and that non-organic, subjective reports tended to erode Kennedy's credibility. AR 17, 331. Dr. Weis found that Kennedy could meet the physical demands of light work but should be restricted to occasional climbing, balancing, stooping, kneeling, and crouching; should never crawl or climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to environmental hazards. AR 17, 326-28.

The ALJ also referenced a functional capacity evaluation conducted by Stephanie McClellan, an occupational therapist, one week before the hearing. AR 18. While noting that Ms. McClellan is not an acceptable medical source,[3] the ALJ determined that her findings were entitled to some weight. *Id.* Based on her evaluation of Kennedy, Ms. McClellan concluded that he has the physical ability to perform work at the light exertional level. AR 18, 438.

The ALJ then contrasted this medical evidence with Kennedy's subjective allegations. The ALJ found that even if Kennedy does, as he contends, spend most of his day lying in bed or on the couch, the evidence does not indicate that this lack of activity is caused by any medical condition. AR 18. He also determined that Kennedy's

---

[3] *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). Those regulations list "acceptable medical sources" who can "provide evidence to establish an impairment." Occupational therapists are not on the list. However, the opinions of non-acceptable sources can be used to determine "the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work." *Lacroix v. Barnhart*, 465 F.3d 881, 886-87 (8th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d), 416.913(d) (evaluating evidence from other sources).

admitted ability to lift two gallons of milk at a time is "generally consistent with light exertional level lifting restrictions." *Id.* Finally, the ALJ noted that while Kennedy alleges an inability to sit for more than 15 to 20 minutes at a time, neither the statements from treating sources nor the functional capacity evaluation reflected any difficulties with sitting. AR 19. For these reasons, the ALJ concluded that the record does not support Kennedy's allegation that he is unable to perform any work and, instead, demonstrates that he is able to perform "seated light" work in accordance with the RFC. *Id.*

C. *Analysis*

As noted earlier, the issue before me is whether the ALJ's assessment of Kennedy's credibility is supported by good reasons and substantial evidence. It is. The ALJ properly concluded the limitations Kennedy alleges are not supported by the objective medical evidence. The lumbar spine MRI performed in October 2010 showed only moderate disc bulging, no evident nerve root impingement and minimal changes from an MRI scan taken four years before the alleged onset date. AR 409. In December 2010, treating source Dr. Goerss noted some limitations but made no reference to pain caused by prolonged sitting. AR 337-38. Treating neurosurgeon Dr. Puumala examined Kennedy in February 2011, found no surgical indications and recommended only conservative treatment. AR 426. And in April 2011, treating source Dr. Drymalski determined that Kennedy could perform light-duty work on a full-time basis. AR 359.

Similarly, a functional capacity evaluation conducted shortly before the hearing found that Kennedy could perform light work. AR 438. By contrast, no treating or consultative source provided an opinion that the effects of Kennedy's impairments are so severe as to prevent him from performing work of any kind. The ALJ did not err in finding that the medical evidence fails to support Kennedy's subjective allegation of complete disability.

Of course, the lack of supporting medical evidence cannot serve as the only basis for discounting a claimant's subjective complaints. *Halverson*, 600 F.3d at 931-32.

Here, the ALJ took other factors into account, including (a) Kennedy's daily activities, (b) the fact that he sought and received only minimal treatment and (c) Kennedy's receipt of unemployment benefits during the relevant period of time. AR 11-17. These factors are likewise supported by substantial evidence in the record as a whole.

With regard to daily activities, Kennedy testified that he lived alone, could drive short distances and was able to do his own cooking, cleaning, laundry, and shopping. AR 15, 18, 33, 63, 65. The ALJ was permitted to find that Kennedy's ability to engage in these activities is inconsistent with his complaint of disabling pain. *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007).

As for treatment, the record contains no evidence that Kennedy was seeking or receiving treatment for back pain as of the alleged onset date. When Kennedy did receive treatment after that date, the treatment was conservative. In August 2010, Dr. Goerss treated Kennedy's pain with medication and injections. AR 15, 413-15. In February 2011, Dr. Drymalski prescribed physical therapy, a home exercise program and medications, but no further surgery. AR 16-17, 355. It was appropriate for the ALJ to consider the conservative nature of treatment in assessing Kennedy's credibility. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).

Finally, it is undisputed that Kennedy received unemployment benefits during part of the period of alleged disability. AR 57-58, 229, 231-32. A claim for unemployment compensation adversely affects a claimant's credibility because an applicant for unemployment compensation must hold himself out as available, willing and able to work. *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). The Commissioner's regulations provide that an individual who is able to engage in substantial gainful activity will not be considered disabled. *See* 20 C.F.R. §§ 404.1571, 416.971. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Medhaug*, 578 F.3d at 817 (citing *Johnson v. Apfel*, 240 F.3d

13

1145, 1148 (8th Cir. 2001)). The ALJ was entitled to consider Kennedy's receipt of unemployment benefits as a factor in determining that Kennedy's subjective complaints were not fully credible.

In short, the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for his assessment of Kennedy's credibility. As such, the ALJ's credibility determination is entitled to deference and is therefore affirmed. *Cox*, 471 F.3d at 907.[4]

### VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Kennedy was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **affirmed**. Judgment shall be entered in favor of the Commissioner and against Kennedy.

**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

---

[4] Because I have concluded that the ALJ's assessment of Kennedy's credibility was appropriate, I need not address the second part of Kennedy's argument, wherein he contends that he must be found to be disabled if his subjective allegations are accepted as true. Doc. No. 12 at 8-9. The ALJ was not required to accept Kennedy's subjective allegations at face value and, in fact, provided good reasons for discrediting those allegations.